**Jaquione JOHNSON, Plaintiff,**

v.

**BRYCO ARMS, et al., Defendants.**

**Joan Truman Smith, Plaintiff,**

v.

**Bryco Arms, et al., Defendants.**

**Nos. 03 CV 2582, 02 CV 3029.**

United States District Court,
E.D. New York.

April 1, 2005.

Law Office of Elisa Barnes, by Elisa Barnes, Esq., New York, NY, for the Plaintiff Joan Truman Smith.

Taub & Marder, by Elliot H. Taub, Esq., Alison G. Fabella, Esq., New York, NY, for the Plaintiff Jacquione Johnson.

Renzulli, Pisciotti & Renzulli, LLP, by John F. Renzulli, Esq., New York, NY, for the Defendant Atlantic Gun & Tackle, Inc.

Lester Schwab Katz & Dwyer, LLP, by Paul L. Kassirer, Esq., New York, NY, The Chiafullo White Group, LLP, by Christopher M. Chiafullo, Esq., Watchung, NJ, for the Defendant Acusport Corp.

Roslynn R. Mauskopf, United States Attorney, by Elliot M. Schachner, Assistant United States Attorney, Brooklyn, NY, for Bureau of Alcohol, Tobacco, Firearms and Explosives.

## MEMORANDUM & ORDER

WEINSTEIN, Senior District Judge.

### I.  Introduction

This is an action in tort arising from the so-called "Wendy's Massacre." Criminals entered a Wendy's food store and attempted to kill all of the employees by shooting each of them in the back of the head at point-blank range; five of the seven victims died. Harmed by the event, plaintiffs sue the distributor and retailer of the handgun, claiming that it fell into the hands of the criminals because of defendants' negligence.

At issue at the discovery stage is whether defendants are entitled to take depositions of three law enforcement employees. Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, defendant Atlantic Gun & Tackle Distribution Co., Inc. ("Atlantic"), appeals from the Magistrate Judge's March 8, 2005 Order, granting the Bureau of Alcohol, Tobacco, Firearms and Explosives' ("ATF") motion to quash the deposition subpoenas served by Atlantic on ATF Special Agent Cameron Conklin, ATF Special Agent John Kilnapp and ATF Compliance Inspector Erika Whelan. Defendant AcuSport cross-appeals, adopting all the arguments propounded by Atlantic. Essentially the issue is whether defendants need the information from these individuals in light of what they have or will have. Since the Magistrate Judge has been closely supervising discovery

and has a good grasp of what the parties' needs and positions are, this court sustains her decision granting the motion to quash.

## II. Facts

Plaintiffs allege that the gun used in the shootings was manufactured at a Bryco Arms plant. It was sold by B.L. Jennings, Inc. to AcuSport Corporation, a wholesale distributor. AcuSport sold the gun to Atlantic Gun & Tackle Distribution Co., Inc. ("Atlantic"), a retailer in Bedford Heights, Ohio. The gun was then allegedly sold by Atlantic to Angela Freeman. Plaintiffs allege she never intended to keep or use the gun herself. Their claim is that Ms. Freeman purchased the gun for her then husband, Bernard Gardier. Defendants have emphasized that "ATF and law enforcement reports indicate," to the contrary, that subsequent to the sale, "Mr. Gardier *stole* the subject pistol from Ms. Freeman and traveled with it to New York," where he and Jamal Gales allegedly sold it to a private individual. 21 C.F.R. § 16.22(c) Summary (Jan. 12, 2005) (emphasis added). Both plaintiffs and defendants agree that the gun was then sold at least twice more in the illegal underground handgun market until it was purchased by John Taylor, who along with his accomplice, shot seven people.

Defendants contend that two of the law enforcement officers whom they seek to depose, Special Agents Conklin and Kilnapp, were involved in the investigation of: (1) the sale of the subject gun; (2) the subsequent theft, possession, and illegal transportation to New York of the gun by Bernard Gardier and Jamal Gales; (3) the subsequent sales of the gun in New York; (4) the ultimate involvement of the gun in the criminal shooting at Wendy's restaurant; and (5) the prosecutions of Bernard Gardier and Jamal Gales.

More specifically, according to defendants, Special Agent Conklin interviewed Freeman, Gardier, and Gales, and ultimately arrested Gardier and Gales for stealing the gun and illegally transporting it to New York and selling it. Special Agent Kilnapp investigated the purchase of the gun by Ms. Freeman and interviewed her. Ms. Freeman provided Special Agent Kilnapp with a second pistol she purchased from Atlantic after the subject pistol was stolen.

Inspector Whelan allegedly conducted various compliance inspections of Atlantic over a period of years. These compliance inspections are the subject of a series of documents which ATF produced to plaintiffs pursuant to Joan Truman Smith's May 14, 2004 subpoena.

Defendants' position is that the testimony of these witnesses is critical to their defense of plaintiffs' claims that the subject gun was knowingly or negligently sold to a straw purchaser by the dealer. In January 2005, Atlantic served subpoenas on ATF and on the three ATF employees, seeking documents and testimony from Special Agents Cameron Conklin and John Kilnapp of the Cleveland Office of ATF, as well as from ATF Compliance Inspector Erika Whelan.

ATF declined to produce the three witnesses for deposition, "in large part because of the burden that such depositions would cause to ATF." Mar. 8, 2005 Order of Mag. Judge at 2 (citation omitted). ATF contended before the Magistrate Judge that the depositions sought would divert the officers from their law enforcement responsibilities. ATF also argued that permitting depositions in the instant case would increase the likelihood that ATF would be burdened with similar requests in the future. *See id.* It contended that much of the information sought by Atlantic was protected by the Consolidated Appropriations Act of 2005, because significant portions were derived from trace data and records maintained by the federal firearms licenses pursuant to law. *See id.* But *cf. City of New York v. Beretta U.S.A. Corp.,* 00–CV–3641, 2005 WL 741794 (E.D.N.Y. Apr. 1, 2005) (holding that the Consolidated Appropriations Act of 2005 does not bar some discovery in this case).

ATF also claims that the three witnesses have no specific recollection of the underlying investigation. Specifically, neither Agent Conklin or Agent Kilnapp investigated the actual shootings at issue; rather, they investigated only the chain of custody of the weapon. Similarly, Inspector Whelan's knowledge is limited to her annual inspections of Atlantic. Finally, ATF contends that it has already disclosed over 650

pages of documents in this case, and these documents should provide all the relevant information that defendant needs.

Mar. 8, 2005 Order of Mag. Judge at 2.

The Magistrate Judge rejected defendant's submission, concluding:

Although defendant argues that ATF's burden in producing witnesses is "easily outweighed by the extreme importance of their testimony in this case," it is unclear exactly what information defendant is seeking to elicit from these witnesses that is not contained in the documents and files already produced by ATF. Given the limited nature of the witnesses' involvement in this case, their asserted lack of independent recollection and the absence of an explanation from defendant regarding its compelling need for the requested depositions, this Court finds that the burden imposed upon ATF, a non-party to this action, seriously outweighs the need for the depositions of these three ATF witnesses.

*Id.* at 3 (footnote omitted).

### III. Law

A. *Rule 72(a)*

Rule 72(a) of the Federal Rules of Civil Procedure provides for review of a magistrate judge's order:

Within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order. . . . The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.

FED.R.CIV.P. 72(a). The appeal is timely.

B. *Standard of Review of Federal Agency's Decision Not to Comply with a Subpoena*

  1. *Rules 26 and 45 of the Federal Rules of Civil Procedure*

In general, a party may obtain discovery of any non-privileged matter that is relevant to a claim or defense of any party. FED. R.CIV.P. 26(b)(1). The court has discretion to circumscribe discovery even of relevant evidence by making "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ." FED.R.CIV.P. 26(c). *See Herbert v. Lando*, 441 U.S. 153, 177, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). Concerned with any of these factors, the court may decide:

(1) that the disclosure or discovery not be had;

(2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place;

(3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;

(4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters;

(5) that discovery be conducted with no one present except persons designated by the court;

(6) that a deposition, after being sealed, be opened only by order of the court;

(7) that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way; and

(8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

FED.R.CIV.P. 26(c).

Rule 45(c) of the Federal Rules of Civil Procedure provides additional protection for nonparties to litigation subject to a subpoena by mandating that a court "quash or modify the subpoena if it . . . subjects a person to undue burden."

■ "Determinations of issues of 'undue burden' are committed to the discretion of the trial court." *Jones v. Hirschfeld*, 219 F.R.D. 71, 74 (S.D.N.Y.2003). In making this determination, a court should limit a party's discovery if it determines that:

(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more con-

venient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

FED.R.CIV.P. 26(b)(2).

■ While judges may "prevent [a] proposed deposition when the facts and circumstances are such that it creates an inappropriate burden or hardship," *In re Subpoena Issued to Dennis Friedman,* 350 F.3d 65, 70 (2d Cir.2003), the "burden of persuasion in a motion to quash a subpoena and for a protective order is borne by the movant." 219 F.R.D. at 74–75. *See also Dove v. Atlantic Capital Corp.,* 963 F.2d 15, 19 (2d Cir.1992) (citing *Penthouse Int'l, Ltd. v. Playboy Enters., Inc.,* 663 F.2d 371, 391) (2d Cir.1981); *Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D. 44, 48–49 (S.D.N.Y.1996); FED. R.CIV.P. 26 advisory committee's note ("Rule 26(c) ... confers broad powers on the courts to regulate or prevent discovery even though the materials sought are within the scope of [discovery under FED.R.CIV.P.] 26(b), and these powers have always been freely exercised."); *Herbert,* 441 U.S. at 177, 99 S.Ct. 1635 ("[T]he district courts should not neglect their power to restrict discovery" under FED.R.CIV.P. 26(c) and "should not hesitate to exercise appropriate control over the discovery process.").

### 2. *Administrative Procedure Act Standard*

ATF contends that its decisions to decline to make three witnesses available for deposition may be reversed by the Court "only if the Court determines that the decisions were arbitrary, capricious or contrary to law," a standard borrowed from the Administrative Procedure Act ("APA"). APA, 5 U.S.C. § 706(2)(A) ("The reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."). In support of its position that the APA language provides the appropriate standard of review, ATF cites cases from the United States Court of Appeals for the Fourth Circuit, the United States Court of Appeals for the Eleventh Circuit, the United States Court of Appeals for the Third Circuit and the United States District Court for the District of Columbia.

In a footnote, ATF concedes that the "Second Circuit has not resolved the issue of the standard of review of a federal agency's decision not to comply with a subpoena" and cites *EPA v. General Electric Co.,* 212 F.3d 689 (2d Cir.2000). In that case, the Court of Appeals for the Second Circuit, on rehearing, struck language in a December 14, 1999 opinion, "which would otherwise [have been] a holding in [the] case," which determined that an agency's refusal to comply with a subpoena amounted to an "agency action" reviewable under APA § 702, and that the APA's standard of review provision, 5 U.S.C. § 706(2)(A), should be used to evaluate the propriety of that action. *Id.* at 690. The Court of Appeals explicitly declined to decide whether the APA standard or, alternatively, the standard contained in Federal Rule of Civil Procedure 45 should govern review of an agency's refusal to comply with a subpoena. More recently, in *SEC ex rel. Glotzer v. Stewart,* 374 F.3d 184, 191 (2d Cir.2004), the Court of Appeals reiterated that "whether APA § 706 governs courts' review of agency non-compliance with discovery requests [is] far from settled." It also noted that "some of our sister circuits have affirmatively held that APA § 706 does not apply to motions to compel agency compliance with subpoenas." *Id.* (citing *Exxon Shipping Co. v. U.S. Dep't of Interior,* 34 F.3d 774, 778–79 (9th Cir. 1994); *Linder v. Calero-Portocarrero,* 251 F.3d 178, 180–81 (D.C.Cir.2001)).

### IV. Application of Law to Facts

■ In the instant case there is no need to decide what burden applies. Whatever the standard, the Magistrate Judge's decision should be affirmed on the merits and for the reasons she relies on.

The chain of sale and custody of the subject handgun is a significant issue of this litigation. The law enforcement investigation into that sale and the gun's subsequent chain of custody is the focus of defendant's subpoenas to Agents Conklin and Kilnapp. Defendants argue that the plaintiffs' public nuisance claims against Atlantic are directed in large part to Inspector Whelan's findings during her annual inspections and to those resulting violations involving defendant Atlantic.

The ATF employees' views are essentially hearsay. What is important is the evidence they relied upon. The jury in the instant cases will have this evidence as a result of discovery available to the parties.

### V. Conclusion

The order of the Magistrate Judge quashing the subpoenas against ATF personnel is affirmed.

SO ORDERED.