Michael SPENCE, Plaintiff

v.

**NCI INFORMATION SYSTEMS, INC., Defendant.**

Civil No. L–05–3127.

United States District Court, D. Maryland.

Jan. 10, 2008.

Matthew Strohm Evans, III, Peter F. Axelrad, Council Baradel Kosmerl and Nolan PA, Annapolis, MD, for Plaintiff.

John G. Kruchko, Kevin McCoy, Kruchko and Fries, McLean, VA, Ariana Wright Arnold, Melanie L. Glickson, Office of the United States Attorney, Baltimore, MD, for Defendant.

## MEMORANDUM

BENSON EVERETT LEGG, Chief Judge.

Now pending is Plaintiff Michael Spence's Motion to Compel testimony from Agents at the Air Force Office of Special Investigations ("AFOSI"). AFOSI, which is not a party to this case, and Defendant NCI Information Systems, Inc. ("NCI") oppose the motion. The Court held a hearing on Spence's motion on September 24, 2007 and is now prepared to issue its ruling. For the following reasons, the motion will be DENIED.

## I. Background

Spence applied for a civilian support position with AFOSI in April 2004. In connection with his application, AFOSI conducted a routine investigation into Spence's background, including interviews with his spouse, neighbors and former employers. Spence was also asked to complete an "Applicant Financial Questionnaire."

After completing its investigation, AFOSI decided not to hire Spence. According to internal reports and recommendation forms, AFOSI's investigation revealed that Spence had experienced financial difficulties and problems with his neighbors. The investigation also revealed that former colleagues and supervisors spoke unfavorably of Spence and did not recommend him for employment. According to a statement by AFOSI Chief of General Law Susan Knutson (formerly Jobe) during the hearing on Spence's motion, any one of these findings, standing alone, is an appropriate ground for a decision not to hire an applicant for AFOSI duty.

Spence initiated this lawsuit against NCI, his former employer, in November 2005, claiming that NCI employees made false and defamatory statements during their interviews with AFOSI investigators. The case was originally filed in the Circuit Court for Anne Arundel County but was timely removed to federal court on grounds of diversity of citizenship.

In accordance with a subpoena issued by this Court in April 2006, AFOSI provided the parties with a report summarizing its investigation into Spence's background. The report names the AFOSI Special Agents who participated in the investigation but fails to specify which Agent(s) spoke to the NCI employees.

In November 2006, using the prescribed AFOSI procedures, Spence asked the Air Force to identify the Agent(s) who interviewed the NCI employees and to make those Agents available for depositions. In an email dated December 13, 2006, Knutson denied Spence's request. In support of the Air Force's position, Knutson wrote: "allowing [AFOSI] agents to be interviewed for every pre-employment investigation of every potential employee for private litigation could have a serious detrimental effect on the mission of AFOSI in that it would prevent agents from performing their duties while tied up in litigation in which the Air Force has no direct interest." (Docket No. 61, Ex. A). Knutson further explained that "in this time of war, AFOSI must be available to deploy anywhere to support our worldwide mission. Having agents tied up in private litigation greatly hinders that mission." *Id.*

On February 8, 2007, Spence filed the instant Motion to Compel, seeking an order directing AFOSI to identify the investigator(s) who interviewed the NCI em-

ployees as well as the officer(s) who made the decision not to hire him. Spence further requests that each of these individuals be made available for depositions.

In support of its initial and "supplemental"[1] Responses to Spence's Motion, AFOSI has submitted the Declarations of Col. Cheryl H. Thompson[2] and Susan Knutson,[3] respectively. Taken together, these declarations provide substantially all of the information that Spence requests. They also expand significantly upon Knutson's initial explanation of AFOSI's decision denying Spence's request for deposition discovery.

In her Declaration of September 24, 2007, Knutson provides the name and location of the AFOSI Special Agent (hereinafter "Special Agent 1") who interviewed the NCI employees. She further discloses that Special Agent 1 is currently working on a classified special access program. According to Knutson, Special Agent 1 retained no notes documenting his or her interviews with NCI employees, other than the summaries contained in the investigation report distributed in accordance with the Court's subpoena in mid–2006.

Building on earlier disclosures by Col. Thompson, Knutson also identifies the individuals responsible for AFOSI's decision not to hire Spence. According to Knutson, AFOSI's decision on Spence's application resulted from the following three-stage process: after the background investigation, the Special Agent who personally interviewed Spence (hereinafter "Special Agent 2"), together with a "reviewing official" who did not participate in the investigation, made the initial recommendation that Spence not be hired.[4] The name and location of Special Agent 2 is disclosed in Knutson's declaration, and the signature of the reviewing official appears in a separate attachment. Their recommendation was forwarded for approval by the Command Applicant Review Board (CARB), a rotating body made up of "high-ranking agents and support staff."[5] *Declaration of Cheryl H. Thompson,* ¶ 11. The CARB recommendation[6] was ultimately reviewed by Brigadier General Dana Simmons, the AFOSI Commander.[7] According to Col. Thompson, General Simmons typically relies "entirely" on the CARB recommendation in making his final decision. *Id.*

1. After Spence's Motion was fully briefed, the Court scheduled a hearing for September 24, 2007 (Docket No. 72). In advance of the hearing, AFOSI filed a Supplemental Opposition to Spence's Motion to Compel (Docket No. 74), as well as a motion requesting leave to file the Knutson Declaration (and attachments) under seal (Docket No. 75). On the morning of the hearing, AFOSI filed a copy of Declaration with the Court and both parties. Because the Court agrees that the Knutson Declaration contains sensitive information, i.e., the names, location, and current assignments of AFOSI personnel, it hereby GRANTS AFOSI's Motion to File Documents Under Seal.

2. Col. Thompson is the AFOSI Staff Judge Advocate at Andrews Air Force Base.

3. As stated above, Ms. Knutson (formerly Jobe) is the AFOSI Chief of General Law.

4. Their recommendation is documented on AFOSI Form 151, a true and correct copy of which is attached to Knutson's declaration.

5. Neither Knutson nor Thompson identify the individual CARB members in their declarations.

6. The decision of the Review Board is documented on AFOSI Form 0–32, a true and correct copy of which is attached to Knutson's declaration.

7. General Simmons is also identified by name in the declaration of Col. Thompson. *See Declaration of Cheryl H. Thompson,* ¶ 11. Because the Government has not requested that the Thompson declaration be placed under seal, the Court sees no reason to refrain from identifying General Simmons in this opinion.

Despite providing Spence with the identifications he requests, AFOSI persists in its assertion that deposition discovery of its officials is unwarranted. Expanding on Knutson's 2006 email denying Spence's request, the Thompson declaration states that Spence's demand is "unduly burdensome" within the meaning of Air Force Instructions governing the provision of testimony by individual employees.[8] According to Col. Thompson, subjecting AFOSI Special Agents to even the briefest of depositions would entail substantial preparation and transportation time, requiring them to be pulled away from their current assignments. *Id.,* ¶ 9. Thompson also states that the deliberations of the CARB are "predecisional and intended to remain confidential in order to protect the integrity of the board process." *Id.,* ¶ 11. Accordingly, Thompson concludes that Spence's request for depositions would have a "significant adverse impact on AFOSI's mission and capability." *Id.,* ¶ 7.

Col. Thompson's arguments are further reinforced in the Knutson declaration, which states that AFOSI receives approximately one to three requests for depositions from private litigants each week. Echoing the claim made in her 2006 email, Knutson asserts that AFOSI cannot regularly grant such requests and continue to carry out its worldwide responsibilities.

Finally, the Knutson declaration provides specific information as to why depositions of Special Agents 1 and 2 would impose an undue burden on AFOSI. As discussed above, Knutson states that Special Agent 1 is currently working on a classified special access program. At the hearing on Spence's motion, Knutson further informed the Court that Special Agent 1 has wide-ranging counterintelligence responsibilities, the performance of which would be impaired by requiring him or her to appear for a deposition. As far as Special Agent 2 is concerned, Knutson states that he/she is no longer on active duty and is currently employed by another government agency. In order to make Special Agent 2 available for deposition, Knutson asserts that AFOSI would have recall the Agent to active duty and coordinate his/her reinstatement with his/her current employer. Accordingly, Knutson repeats her assertion that depositions of Special Agents 1 and 2 would compromise AFOSI's worldwide mission.

## II. Standard of Review

 "[W]hen the government is not a party [to the underlying action], the [Administrative Procedure Act ('APA')] provides the sole avenue for review of an agency's refusal to permit its employees to comply with subpoenas." *COMSAT Corp. v. National Science Foundation,* 190 F.3d 269 (4th Cir.1999) "The APA waives sovereign immunity and permits a federal court to order a non-party to comply with a subpoena if the government has refused production in an arbitrary, capricious, or otherwise unlawful manner." *COMSAT,* 190 F.3d at 277. An agency decision is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it

---

8. AFOSI is subject to *Touhy* regulations issued by the Department of Defense. *32 C.F.R. Part 97; United States ex rel Touhy v. Ragen,* 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951). Pursuant to those regulations, the Air Force has issued instructions addressing the provision of testimony by individual employees. According to Air Force Instruction 5–301, 9.5.1, undue burden is a factor of relevance in determining whether or not to comply with a request for testimony. *See also AFOSI Resp. Br.,* 5.

could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 44, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). Although the reviewing court may not "supply a reasoned basis for the agency's action that the agency itself has not given," *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), it may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp. Inc. v. Arkansas–Best Freight System*, 419 U.S. 281, 286, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974).

## III. Discussion

### A. *Separate Action Not Required:*

■ As an initial matter, the Court must determine whether the instant lawsuit is the appropriate forum for reviewing AFOSI's refusal to permit deposition discovery of its personnel. Both AFOSI and NCI argue that the Court is without jurisdiction unless and until Spence initiates a collateral action under the APA. We disagree.

The Fourth Circuit has not stated whether, in a case such as this, a separate suit is required.[9] The Second Circuit, however, has ruled that a party seeking to enforce a subpoena duces tecum against a nonparty federal agency need not initiate a collateral action. *United States Environmental Protection Agency v. General Electric Co.*, 197 F.3d 592 (1999).[10] Instead, the dispute may be resolved under the provisions of the APA as part of the un-

derlying litigation. Requiring a separate action, the Second Circuit explained, "would result in time-consuming additional litigation that would either render the resulting discovery moot for the original litigation or unnecessarily delay that action." *Id.* at 599.

The Second Circuit's approach is practical. To require Spence to initiate an separate and independent action would result in needless delay and duplication of effort. In the absence of guidance from our own Court of Appeals, and mindful that this lawsuit was initiated in November 2005, the Court will address Spence's Motion as part of the instant litigation.

### B. *Identity of Investigators and Hiring Officials:*

As set forth above, the Knutson declaration discloses the identity and location of the AFOSI Special Agent who interviewed Spence's former NCI colleagues and supervisors. Knutson's declaration also identifies the AFOSI officials who initially recommended that Spence not be hired, as well as the Brigadier General with ultimate responsibility for AFOSI hiring decisions. At the hearing conducted on September 24, counsel for Spence acknowledged that AFOSI's recent disclosures provide substantially all of the identifications that Spence has requested. Accordingly, insofar as Spence asks that we require AFOSI to disclose the identity of its investigators and hiring officials, his motion is denied as moot.

---

**9.** In support of its argument that a separation action is required, AFOSI cites Judge Chasanow's recent opinion in *Bavarian Nordic A/S v. Acambis, Inc.*, DKC–06–2406 (D.Md.2007). Nothing in that opinion, however, suggests that a collateral lawsuit is *required* before a district court may review an agency's refusal

to provide testimony under the provisions of the APA.

**10.** *Compare Exxon Shipping Co. v. United States Dep't of Interior*, 34 F.3d 774 (9th Cir. 1994) (Holding that a separate action *is* required).

C. *Depositions of Investigators and Hiring Officials:*

██ Spence contends that AFOSI's refusal to permit deposition discovery of its personnel was arbitrary, capricious, or otherwise contrary to law. In light of the record before us, however, we conclude that AFOSI acted reasonably and in accordance with its own regulations. Accordingly, we hold that AFOSI did not violate the APA by denying Spence's discovery request.

It is plainly apparent from Knutson's December 2006 email that AFOSI concluded that Spence's request was unduly burdensome within the meaning of Air Force Instruction 51–301.[11] Although Spence correctly observes that Knutson's email does not refer specifically to the applicable Air Force Instruction(s), we decline to hold that AFOSI was required to utter some formulaic incantation in order to satisfy the APA. In reviewing AFOSI's refusal to provide discovery under the arbitrary and capricious standard, we are required to "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp. Inc.,* 419 U.S. at 286, 95 S.Ct. 438. In this case, it is readily discernable from Knutson's email

that AFOSI determined that producing its officials for depositions would compromise the agency's ability to carry out its wide-ranging responsibilities.[12] Specificity of language aside, Knutson's email makes clear that AFOSI denied Spence's request on grounds of undue burden, in accordance with Air Force Instruction 51–301.

██ Spence further argues that AFOSI was not entitled to consider the cumulative effects of similar discovery requests in determining whether his demand was unduly burdensome. This is a misstatement of the law. The Fourth Circuit has recognized on multiple occasions that federal agencies have a compelling interest in "conserv[ing] governmental resources where the United States is not a party to a suit, and to minimize governmental involvement in controversial matters unrelated to official business." *Boron Oil Co. v. Downie,* 873 F.2d 67, 70 (4th Cir.1989); *see also COMSAT Corp. v. Nat'l Sci. Found.,* 190 F.3d 269 (4th Cir.1999). To effectively further this interest, federal agencies must be permitted to consider the precedential effects of granting individual discovery requests. Indeed, in both *Boron Oil*[13] and *COMSAT,*[14] the Fourth Circuit considered the "potential cumulative bur-

---

**11.** Air Force Instruction 51–301 § 9.5.1 states that before releasing official information, release authorities must consider, among other questions, whether the demand or request is "unduly burdensome or otherwise irrelevant."

**12.** By way of review, Knutson's email stated, *inter alia,* that "allowing agents to be interviewed for every pre-employment investigation of every potential employee for private litigation could have a serious detrimental effect on the mission of AFOSI in that it would prevent agents from performing their duties while tied up in litigation in which the Air Force has no direct interest."

**13.** In *Boron Oil,* the Court affirmed the refusal of the Environmental Protection Agency to

permit testimony by a individual employee in a state court action to which the Government was not a party, observing that that "[i]f EPA On–Scene Coordinators were routinely permitted or compelled to testify in private civil actions, significant loss of manpower hours would predictably result and agency employees would be drawn from other important assignments." 873 F.2d at 70.

**14.** In upholding the decision of the National Science Foundation not to comply with an arbitrator's prehearing subpoenas, the *COMSAT* panel noted the possibility of third-party subpoenas by "the limitless number of private litigants who might seek to draw upon NSF's expertise." 190 F.3d at 278.

den upon the agency" in evaluating the propriety of a refusal to provide testimony under the APA. Accordingly, we reject the argument that AFOSI was required to limit its inquiry to whether Spence's particular request was unduly burdensome. As the case law makes clear, the Air Force was entitled to consider the cumulative effect of granting similar requests.

Although AFOSI's actions in this case are adequately justified solely on the basis of Knutson's initial email, the subsequent declarations of Knutson and Col. Thompson provide further support for Air Force's determination that Spence's request is unduly burdensome. As discussed above, Col. Thompson specifically invokes Air Force Instruction 51–301 in repeating Knutson's assertion that Spence's request would have a detrimental effect on AFOSI's mission. In addition, the Knutson declaration clearly explains precisely why depositions of Special Agents 1 and 2 would pose an undue burden on AFOSI. Though unnecessary to carry the Air Force's burden under the deferential arbitrary and capricious standard, these subsequent filings do much to illuminate Knutson's original explanation of AFOSI's decision denying Spence's request, further convincing us that the Air Force has complied with the strictures of the APA in refusing to produce its officials for depositions.

## IV. Conclusion

For the foregoing reasons, we conclude that Spence's motion to compel the identification of AFOSI investigators and hiring officials has been rendered moot by subsequent AFOSI disclosures. We also conclude that the Air Force acted reasonably and in accordance with its own regulations in denying Spence's request for depositions of AFOSI personnel. Accordingly,

Spence's Motion to Compel is hereby DENIED. A separate order follows.

It is so ORDERED.

## ORDER

For the reasons stated in the Memorandum of even date, the Court hereby:

(1) DENIES Spence's Motion to Compel; and

(2) GRANTS AFOSI's Motion to File Documents Under Seal.